# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA

CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JUN 0 7 2016

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

W.A. GRIFFIN, MD                    )
    Pro Se                    )
                 )
      Plaintiff,              )
                 )
        vs               )          6:16CV00029
                 )
AREVA, INC.                        )
                 )
                 )
                 )
                 )
                 )
      Defendant,              )

---

## COMPLAINT

---

W.A. GRIFFIN, MD
550 PEACHTREE STREET N.E.
SUITE 1490
ATLANTA, GEORGIA 30308
(404) 523-4223
WAGRIFFINERISA@HOTMAIL.COM

Page **1** of **28**

# INTRODUCTION

PLAINTIFF W. A. Griffin, M.D. alleges against Defendant as follows:

## I. JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this action pursuant 28. U.S.C. 1331, because the action arises under the laws of the United States, pursuant to 29 U.S.C 1332(e)(1), because claimant seeks to enforce rights under the Employment Retirement Income Security Act

("ERISA").

2.    This Court is the proper venue for this action pursuant to 29 U.S.C 1132(e)(2) it is the Judicial District where the plan is administered (i.e. Lynchburg)

## II. THE PARTIES

A.      Plaintiff

3.   W. A. Griffin, MD  is a resident of Fulton County, Georgia.  Plaintiff, as a condition of service, requires patients to assign his or her health insurance benefits and rights.  Plaintiff received an assignment of benefits and rights for every claim at issue in this litigation.  Plaintiff has *derivative* standing to pursue the claims for relief in this Complaint as an assignee of the member's benefits and rights under

the health plan, as a party who suffered injury in fact and loss of money and/or property as a result of the Defendant's conduct, and as a party who rendered services to the plan member with prior knowledge by the Defendant without being properly compensated for the fair market value of those rendered services.

Medical providers have derivative standing to sue under ERISA.

Plaintiff is a dermatologist that operates a small practice in Fulton County and files Pro Se because there are hundreds of unrelated similar complaints that require litigation and it would not be feasible to hire an attorney for such small dollar amounts because the legal fees for federal court would cost more than the claims at issue. Over time, daily cheating on small claims add up to large financial losses in annual revenue for small provider offices.

### B. AREVA INC./ ERISA Plan Defendant

4. Plaintiff is informed and believes that Defendant Areva, Inc. is a corporation duly organized existing under the laws of the State of Georgia, has headquarters in the Charlotte, North Carolina and administers the health plan in Lynchburg, Virginia. Defendant Areva Inc. (*hereafter Areva*), can be served with process through its registered agent Corporate Creations Network Inc. located at 2985 Gordy Parkway, 1st Floor Marietta, Georgia 30006. Plaintiff is informed and believes that Areva health plans are self-funded ERISA plans, thus making them

proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d), and liable for unpaid services and penalties.

5.     Areva administers various aspects of the self-funded ERISA plans through its agent, CareFirst of Maryland, Inc. (DBA CareFirst BlueCross BlueShield, DBA "Home Plan") and/or Blue Cross Blue Shield HealthCare Plan Of Georgia (DBA "Host Plan") (*hereafter Blue Cross*).

6.     The agents contracted by Areva are delegated plan fiduciaries.

7.     Areva, in its role as plan administrator, is liable for all of the actions of any agent that acts on its behalf to help administer the plan. These claims agents are hired to process claims, manage appeals, and provide members access to provider network for medical services.

## III.    ALLEGATIONS COMMON TO ALL CLAIMS

8.     It is standard practice in the health care industry that when a provider enters into a written contract with Areva agents such as Blue Cross, the provider agrees to accept reimbursement that is discounted from the provider's billed charges in exchange for the benefits of being a "contracted provider" (i.e., a provider with a written contract with the plan). These benefits include an increased volume of business because the health plan provides financial and other incentives for its members to receive their medical care at the contracted provider, advertises

that the provider is "in-network", and allows members to pay lower co-payments and deductibles to use the contracted provider.

9. Conversely, when a provider, such as W. A. Griffin, M.D, does not have a written contract with an agent, the provider receives less business from the plan, as the health plan discourages its members from receiving their care from an out-of-network provider. The health plan is *not* entitled to a discount from the provider's billed charges because it is not providing the provider with the benefits of an increased patient volume that result from being an in-network provider.

10. In recent years, Blue Cross' contracts have demanded such low rates and have become so onerous and one-sided in favor of Blue Cross, that many providers like W. A. Griffin, MD, have determined that they cannot afford to enter into such contracts with Blue Cross.

11. As a result, a growing number of providers have become "non-contracted" or "out-of-network" with Blue Cross. This "out-of-network" trend is not common in Georgia but very common in states like California, New York, and New Jersey. In Georgia, ninety seven percent of providers are in-network with Blue Cross.

12. Even with this handful of non-contracted claims in the metro Atlanta area, Areva, through its agent Blue Cross, has drastically underpaid Plaintiff for the medically necessary services provided to members. Blue Cross has used flawed methodologies that unilaterally fail to comply with the provisions of the members'

insurance contracts, ERSIA plans, Summary Plan Descriptions ("SPDs") or Evidence of Coverage ("EOCs") for calculating payments to non-contracted providers, do not comply with legal standards and generally accepted industry standards for calculating payments to non-contracted providers, and results in payments which are not reasonable. Instead, these flawed methodologies unfairly and illegally shift the burden and expense of payment to the patients and force non-contracted providers to balance bill their patients for sums which are legally owed by the Defendant.

13.    These low payment schemes to non-contracted providers have an adverse economic impact and hurt many small businesses like Plaintiff who have already taken a decline in patient volume in exchange for out-of-network services. In addition to payment schemes, it is not uncommon for Blue Cross to retaliate against out-of-network providers by *intentionally* ignoring ERISA appeals and failing to process claims altogether.

14.    Areva has failed to properly administer this plan.

15.    Areva, through its agent Blue Cross, has violated ERISA claim and appeal procedures.

16.    Areva, through its agent Blue Cross, has failed to pay the claims properly.

17.     Areva, through its agent Blue Cross, has failed to provide plan documents such as the summary plan description, methodology, rate tables, and fee schedules that were used to determine in the adverse benefit determinations.

17.     Areva, through its agent Blue Cross, has failed to honor the usual, customary, and reasonable benefit level which is standard for out of network providers.

18.     Plaintiff had the member sign a financial statement that specifically states that the each billed procedure code for the geographic area is consistent with the usual customary and reasonable benefit level (*hereafter UCR*) for out-of- network providers. Currently, the Plaintiff is a licensed user of a national database called Fair Health Inc., which provides hospitals, physicians, insurance companies, and self-funded plans with the UCR data for procedure and billing codes used for out-of-network services. Most reputable plans honor the UCR data presented by Fair Health Inc. Other terms for UCR are "maximum allowable "or "prevailing rate".

19.     Upon information and belief, Areva has contracted with agents such as Blue Cross that receive significant bonuses exclusively based upon cheating providers and members.

20.     Upon information and belief, Areva does not monitor its agents which has directly caused injury to plan beneficiaries such as Plaintiff and has shifted provider benefit payments from doctors to Blue Cross shareholders. In essence,

premiums are no longer paying doctors because illegal payment schemes and secret bonus schedules are diverting the majority of employee premium funds to Blue Cross executives and shareholders. Paying doctors has become a side show.

## IV. FACTS TO SUPPORT THE ALLEGATIONS

21.   On April 30, 2013 patient A.H. presented to Plaintiff's office for surgery. On the date seen, Plaintiff's staff called to 1-800 number on the back of the member I.D. card to verify that the plan had coverage for out of network services. The benefit agent advised Plaintiff's office staff that out of network benefit are payable that the usual, customary, and reasonable benefit level. Also, customer services stated that the services were considered "out of area claims" and needed to be submitted to the local Blue Cross plan in Georgia

22.   After Areva agents verified coverage, A.H. signed a copy of the office HIPPA form, designated authorized representative form/legal written assignment of benefits and Blue Cross specific designated authorized representative form. Prior to accepting the forms, Plaintiff's office staff obtained verbal confirmation from A.H. that he understood that the assignment of benefit and/rights and authorized representative form.

23.   The claim totaled $2, 418.02 based upon the standard UCR fee schedule and was mailed to Areva through its agent Blue Cross.

24. The claim file included a claim form, a copy of the insurance card, and a copy of the written assignment of benefit/designated authorized representative form. (**EXHIBIT A- three page claim file**)

25. On May 14, 2013, Areva, through its agent Blue Cross, only allowed $997 (or 41% of the UCR charges). Plaintiff was only paid $278.22 *directly*. Based upon the correct UCR benefit level and plan benefits, Plaintiff is owed an additional payment totaled at $1414.39. It was clear that the only priority for the claims fiduciary was to cheat and steal Plaintiff's revenue at the expense of the member's out of pocket cost.

26. On May 17, 2013 Plaintiff submitted a First Level Appeal to Areva, through its agent Blue Cross. The appeal and assignment of benefit/authorized representative form was faxed and sent via Certified Particle No. <u>7012 3050 0002 0475 2576</u>. But, Areva, through its agent Blue Cross, ignored the appeal. Therefore, On July 6, 2013 Plaintiff submitted a Second Level Appeal via Certified Particle No. <u>7012 3050 0002 0475 2910</u> that was received on July 13, 2013.

27. The Second Level Appeal was extremely detailed and unambiguous in the request for plan documents:

a) For Example, the Second Level Appeal requested a full and fair review by

stating that " ERISA  Section 503 (2) and the accompanying regulations require plans to provide an integral process for the appeal of any benefits claim denial. The review procedure must allow a claimant or his duly authorized representative to: 1) Request a review upon written application to the plan 2) Review pertinent documents, and 3) Submit issues and comments in writing."

b) For Example, the Second Level Appeal advised Areva through its agent Blue Cross, that the "appeal is filed with the Plan Administrator of the plan, or appropriate named fiduciary or insurer of the plan. Any individual who is not designated  as plan administrator or appropriate name fiduciary by this plan is *required*, by ERISA and as your fiduciary duty, to forward this legal document to such appropriate individual."

c) For example, the Second Level Appeal advised Areva, through its agent Blue Cross, that Plaintiff was the assignee of benefits and rights a <u>third</u> time. As such, the appeal letter specifically warned the plan that they would not be able use anti-assignment clauses as a defense later on. The letter specifically stated verbatim:

Should this ERISA plan contain unambiguous anti-assignment clauses prohibiting assignment of rights, benefits, and causes of action in the SPD, the plan administrator is required to timely notify or disclose the assignee of such prohibition by disclosing such SPD, especially on this appeal process, to avoid judicial unenforceability of your anti-assignment clause on judicial process.

d) For example, the Second Level Appeal incorporated detailed document request

for plan documents as follows:

1. <u>Identification of Plan Administrator of this employee benefit plan, including name, telephone number and postal mailing address; and if such plan administrator retained discretionary authority or control over the plan operation, if not, identification of any de facto plan administrator/fiduciary with designated or delegated discretionary authority;</u>
2. <u>Identification of Appropriate Named Fiduciary, Insurer designated to review benefits denials and make decisions on review (appeal), including specific name, telephone number and postal mailing address; and how such insurer obtained discretionary authority or control over plan operation;</u>
3. <u>In case of a Third Party Claim Administrator (TPA) without discretionary authority and with nonfiduciary status, provide a complete copy of plan document with unambiguous definitions and provisions of discretionary authority designation and specific ministerial duties authorized and specified for TPA.</u>
4. <u>Identifications of any fiduciaries designated in SPD or non-fiduciaries delegated by this plan administrator or insurer who makes benefits determination, medical determination and mixed medical and benefits eligibility determination, including names, telephone numbers and postal mailing addresses.</u>
5. <u>Complete copy of Summary Plan Description (SPD) of this plan (not just selected pages), please specify reference to the pertinent plan provisions on which the denial is based and clarify if this SPD provided upon this request is final and complete controlling and governing plan document;</u>
6. <u>AND If SPD provided is not final and complete legal controlling or governing document for this plan, please provide a complete copy of your controlling and governing legal documents for this plan, with specific provisions and limitations of coverage, assignment and ERISA rights, including but not limited to any official copy of Medical Plan Document, Master Copy of Group Insurance Policy, Group Insurance Certificates and Riders, *upon which this plan is maintained and operated, and your denial decisions are based.* Please explain and clarify which document is final and legal controlling and governing document and why. Equitable estoppel doctrine and detrimental reliance of SPD or legal control documents will preclude you from using these documents in defending your denial decision should judicial review become inevitable after you refused to make such disclosure of any ERISA controlling legal documents but relied upon such documents in making your denial decisions.</u>
7. <u>Appeal (claims review) procedures established and maintained for this plan as required by ERISA;</u>
8. <u>Publications, database and schedules used to determine your Usual, Customary and Reasonable Charges for this plan in accordance with DOL Advisory Opinion, 96-14A;</u>
9. <u>Any and all internal memos, telephone communication logs associated with this claim denial and appeal, INCLUDING ANY IN-HOUSE AND OUTSIDE COUNSEL'S ADVICE AND OPINIONS rendered on record in connection with handling this claim denial and review (such document is not attorney-client privileged because such privilege is waived by "fiduciary exception", In re Long Island Lightning Co., 129 F. 3d 268, 272 (2nd Cir. 1997)</u>

**as further explained by the Ninth Circuit in United States v. Evans, 796 F. 2d 264, 266 (9th Cir. 1986)), also supported by Department Of Labor Amicus Curiae regarding Disclosure of Attorney-Client Communications and Work Products by Plan Fiduciaries to Plan Participants and Beneficiaries, 05/13/1994;**

10. **Complete copy of any past and current contracts between tis employee benefit plan and third party administrator (TPA) under which the plan is established or operated, in accordance with DOL Advisory Opinion, 97-11 A.**

e) For example, the Second

Level Appeal warned Areva, through its agent Blue Cross, that there are tough

penalties for non-compliance with document request. In fact, the warning

specifically stated:

Any person convicted of willfully violating the SPD, SMM, or request for information disclosure requirements will be fined up to $5,000 (or $100,000 for certain violations) or imprisoned up to one year or both. In addition, any person knowingly making false statements or representations will be fined up to $10,000 or imprisoned for five years or both.......Faced with the possibility of $110 per day under 1132(c)(1)(B), a rational plan administrator or fiduciary would likely opt to provide a claimant with the information requested if there is any doubt as to whether the claimant is a "participant," especially when the reasonable costs of producing the information can be recovered.....

d) For example, the Second Level Appeal incorporated a Summary Plan

Description Request form to *assist* the plan fiduciaries with the document request.

For example, the request form stated verbatim as follows:

**Summary Plan Description Request Form**

The SPD you requested is enclosed.
( *actual form permits each line item to be checked*)

We are the Nonfiduciary Third Party Administrator for the above captioned plan.

The Plan Administrator/Named Fiduciary for such employee is:

Name:_____

Address:_____

Telephone No.:_____

Fax No.:_____

We are the insurer for the above named. The insurance policy is not an Employee Health Care Plan.  Please refer to the insured for policy coverage information.

We have no record of the above captioned employee.

We are no longer the plan administrator for the above captioned employee. According to our record, the new plan administrator is:_____

We are the insurer for the above captioned plan, but we are not the  designated Plan Administrator and have not been given any discretionary
authority or control over the Plan Administration. We cannot forward your SPD request to the plan administrator because we do not know who the plan administrator is.

We are not the designated plan administrator but have been delegated by the plan administrator to administer the Plan and have been given discretionary
authority or control over the plan administration; however, we never have a copy of the SPD and will not be able to supply or disclose it.

We are the named fiduciary for the above captioned ERISA plan. The plan sponsor is solely responsible for developing and distributing the SPD. We do not possess or maintain copies of the SPD even though we made initial claim determination and appeal decisions.

We refuse to provide you with requested SPD for the reasons:_____

Name

Signature:_____ Title:_____

Date:_____

Page **13** of 28

e) For Example, the Second Level Appeal also advised Areva, through its agent Blue Cross that " this appeal is filed with the Plan Administrator of the above captioned plan, or appropriate named fiduciary or insurer of the plan. Any individual who is not designated as plan administrator or appropriate named fiduciary by this plan is required, by ERISA and as your fiduciary duty, to forward this legal document to such appropriate individual." ( **Exhibit B- Copy Of Second Level & Appeal Return Receipt)**

28.     The Second Level Appeal was completely ignored and NONE of the requested documents in the Second Level Appeal were received.

29.     On October 13, 2013 Plaintiff submitted the entire claim file in a complaint to the Department of Labor in Atlanta. The Department of Labor did not do anything other than advise Plaintiff that ERISA matters are the responsibility of the employer, not Blue Cross. Additionally, the DOL advised Plaintiff of her private right to sue.

30.     Areva is prohibited from exerting any defenses that may be outlined in the Summary Plan Description because they did not participate or produce ANY documents during the administrative appeals process. Therefore, if they attempt to overload the federal docket with plan documents that they intentionally and recklessly did not provide during the administrative appeals process, those documents should only be permitted to *assist* the Plaintiff's claims. Areva should

not be able to use plan documents that they failed to produce for self-defense.

31.     Areva has zero grounds for defense. They did not participate in the administrative appeals process even though their agent received two certified ERISA appeals.

32.     Areva, through its agent Blue Cross, has violated all ERISA claim and appeal procedures.

## V. ASSIGNMENT AND STANDING

33. Plaintiff has standing to pursue these claims as an assignee of the patient benefits. Prior to receiving treatment, every patient of the Plaintiff signs as a legal "Assignment of Benefits" and "Designation of Authorized Representative" form agreeing to, *inter alia*, assign his or her health insurance benefits, as well as broad array of related rights, to their provider, who is the Plaintiff in this case. Each assignment of benefits provides Plaintiff to be paid directly by the patient's insurance for the services provided to the patient, and authorized Plaintiff to obtain plan documents on the patient's behalf and take all action necessary to pursue benefit claims on the patient's behalf.

34. Plaintiff received an assignment of benefit and rights for every claim at issue in this litigation. Plaintiff maintains each patient's assignment of benefits as part of the patient record.

35. This written, legal assignment of benefits contained an exhaustive list of

Case 6:16-cv-00029-NKM   Document 1   Filed 06/07/16   Page 15 of 27   Pageid#: 15

rights that the patient conveyed to Plaintiff. In relevant part, the form states:

If my/this current policy prohibits direct payment to doctor, I hereby also instruct and direct you to make out the check to me and **mail it to the above address** for the professional or medical expense benefits allowable, and otherwise payable to me under my current insurance policy as payment toward the total charges for the professional services.

**This is a direct assignment of my rights <u>and</u> benefits under this policy and designation of authorized representative.**

I hereby authorized the above named provider to release all medical information to process my claims under HIPPA to any insurance company, adjuster, or attorney involved in this case for the purpose of processing claims, claim appeals, grievances, and securing payments. I hereby authorized any plan administrator or fiduciary, insurer and my attorney to release to such provider any and all plan documents, insurance policy and/or settlement information upon request from such provider to claim such medical benefits, reimbursement, and any applicable remedies.

This assignment of right and benefits is valid for my provider to stand in my shoes and pursue claims for benefits, statutory penalties, breach of fiduciary duty, any ERISA claim matter, and any state claim. The assignment is valid to sue employers, plan administrators, third party administrators, and <u>any</u> entity related to the administration of my health benefit plan including the federal government, local government, non-ERISA plan and/or claims administrators.
**(updated section assignment- See Exhibit C- Assignment of Benefit)**

In considering the amount of medical expenses to be incurred, I, the undersigned, have insurance and/or employee health care benefits coverage, and hereby assign and convey directly to the above named healthcare provider(s), as my designated Authorized Representative(s), all medical benefits and/or insurance reimbursement, if any, otherwise payable to me for services rendered from such provider(s), regardless of such provider's managed care network participation status. Unless revoked, this assignment is valid for *all* administrative and judicial review under PPACA, *ERISA*, Medicare and applicable state and federal laws.

36.     Based upon the course of dealings between Plaintiff and Applied Industrial,

through its agent Blue Cross, Plaintiff is informed and believes that no provision exist in the administered plans which preclude the assignment of claims which the insured gave to Plaintiff, and the Defendant has waived such provisions. This is because, throughout the entire administrative process of claims and appeals, Areva through its agent Blue Cross, never referenced any anti-assignment provision of any plan, never refused to communicate with Plaintiff based on any such anti-assignment, and never refused to pay any of Plaintiff's claims based on any such anti-assignment provisions. As stated earlier, a check for payment was written directly to Plaintiff.

36. The ERISA regulations require Areva, *inter alia*, to state (i) the specific reason or reasons for the adverse determination, and (ii) reference to the specific plan provisions on which the determination is based. 29 C.F.R. § 2560.503-1(g)(1). At no time during the administrative process did Areva, through its agent Blue Cross, ever state that the specific reason for the adverse benefit determination was due to an anti-assignment provision, nor did they reference a specific anti-assignment provision in any plan document. As stated earlier, Areva did not even participate in the administrative appeals process.

37. Moreover, the ERISA statue and regulations require Areva and other plan fiduciaries to provide relevant plan documents. 29 U.S.C. § 1104, 1024 and

1132; 29 C.F. R. § 560.503-1. At no time during the administrative process did Areva or its agent Blue Cross ever send any plan documents containing any anti-assignment provision to Plaintiff.

38.     On the contrary, Areva, through its agent Blue Cross, engaged in regular interaction with Plaintiff prior to and after the claims were submitted without mentioning or invoking any matter regarding assignment on at least five occasions (e.g. when the benefits were verified, when the claim was submitted to their agent, when the claim was processed, when Blue Cross received the two ERISA appeals). When Plaintiff's office staff have spoken to Areva agents to verify benefits and eligibility for out of network services, at no time did the agent claim that  the patient was not eligible to assign claims to Plaintiff and never informed Plaintiff of any such provisions of the plans. In fact, the fact pattern above has shown that Areva had plenty of opportunity to notify Plaintiff of any such anti-assignment provisions.

39.     Therefore, to the extent any plan documents have any anti-assignment provisions, Areva has waived their right to assert such anti-assignment provisions as a defense in paying claim and penalties.

40. Additionally, the claim at issue was processed in Georgia. Georgia state law prohibits self-funded plans, heath plans, and insurers plans from blocking *provider* assignment of benefits. The statue reads as follows:

..whenever an accident and sickness insurance policy, subscriber contract, or self-insured health benefit plan, by whatever name called, which is issued or administered by a person licensed under this title provides that any of its benefits are payable to a participating or preferred provider of health care services...the person licensed under this title shall be required to pay such benefits... directly to any similarly licensed nonparticipating or nonpreferred provider who has rendered such services, has a *written assignment of benefits*, and has caused written notice of such assignment to be given to the person licensed under this title

This state assignments of benefits laws are not preempted by ERISA. ( See

*Louisiana Health Service & Indem. Co. v. Rapides Healthcare System*, 2006

WL 2361696 (5th Cir. 2006)

41.     Other states including Georgia have mandated assignment of benefits.

**Exhibit D- Other states with assignment of benefit laws.**


## VI. The Blue Card Network

42.   The key to understanding the evolution of this lawsuit is by unfolding the

components and players involved in the Blue Card Program.

43. Upon information and belief, the Blue Cross Blue Shield Association

("BCBSA") is the trade association for 39 independent, <u>locally</u> operated Blue

Cross Blue Shield Companies. A strong, vibrant contractual relationship between

each local company is governed by the bylaws of the association's mandatory

participation in the Blue Card program.

44.     Upon information and belief each independent company regulates a certain

jurisdiction or state and act on each other's behalf under assignments through Inter-Plan agreements that are incorporated into the administrative services agreements between the primary claims administrator or "Home Plan" and Plan Administrator.

45.    The "Home Plan" (CareFirst BlueCross BlueShield in this case) is always the Blue Cross company that signs the administrative service agreements with the plan administrator.

46.    Plaintiff is informed and believed that the Blue Card program is a national program that enables members of one BCBSA member company to obtain healthcare services while traveling or living in another BCBSA member company's service area. The Blue Card program links healthcare providers with BCBSA member companies across more than 200 countries and territories worldwide, through a single electronic network for claims processing, appeals, and reimbursement.

47.    Upon information and belief the administrative service agreement between Areva and CareFirst BlueCross BlueSheild (dba "Home Plan) incorporates Inter-Plan Arrangements and/or amendments that has language *similar* to the following:

> *Home Plan* has a variety of relationships with other Blue Cross and/or Blue Shield Licensees referred to generally as the "Inter-Plan Programs". Whenever members access healthcare services outside the geographic areas

the claims for those services may be process though one of these Inter-Plan Programs and present to Home Plan for payment in accordance with the rules in the Inter-Plan programs policies then in effect.........this program allows Members to obtain services from providers that have contractual agreement (i.e., are "participating providers") with local Blue Cross and/or Blue Shield Licensee in another geographic area, as well as non-participating providers in some instances.

48.     Upon information and belief, all claims submissions and appeals *must* be submitted to the local plan under the Blue Card program. And, the Host plan will forward claims and appeals to the Home plan if necessary or communicate with the provider if an alternative appeal track is warranted. All the claim and appeals at issue in this lawsuit were submitted to Areva through the Blue Card program. As stated above Areva requires all appeals and document request to be submitted directly to CareFirst or through the Blue Care Program for out of area claims.

49.     Upon information and belief The Host plan is almost always the exclusive contact between the member and the provider because the Blue Card program facilities the exchange of data between the Home and Host plan. The entire point of the program is to permit a *single*, contact for out of area claims (like the one in this complaint) between out of area member and/or provider. An illustration of this process can be found on www. Bcbsga.com ( **Exhibit E- Claims Flow through Blue Card)**

50.     Upon information and belief, each Blue Cross administrative services agreement incorporates conformity clauses that permit each independent Blue

Cross company to incorporate state insurance regulations into the plan that are not preempted by ERISA. These state insurance regulations are carried out though the inter-plan program assignments that are the hallmark of the Blue Card program and/or BCBSA bylaws. For example, in this complaint, Blue Cross Blue Shield of Georgia, through an assignment with CareFirst BlueCross, is responsible for processing claims in Georgia in accordance with state regulations Some Georgia state insurance regulations that are not preempted by ERISA. This concept is critical because it ties into the Assignment of Benefits & Standing Sections below. The table below helps clarify these relationships:

| Plan Administrator | Primary Claims Administrator "Home Plan" Claims Fiduciary | Secondary Claim Administrator "Host Plan" |
|---|---|---|
| Areva Inc. | CareFirst BlueCross BlueShield | Blue Cross Blue Shield of Georgia |
| | Role in this complaint<br><br>Primary ASA contract holder<br><br>Relayed Plan Benefits To BCBSGA | Role in this complaint<br><br>Determined Allowable (UCR)<br><br>Accepted Claims<br><br>Accepted Appeals through Blue Card Program: P.O. Box 9907 Columbus, Georgia 31908<br><br>Answered Appeals and/or Forwarded Appeals to Home Plan |

Page **22** of **28**

|  |  | Upon Information and Belief: Inter-plan Assignee of Home Plan via Blue Card Program and/or BCBSA bylaws |
|---|---|---|
|  | Actions of this claim administrator governed by Maryland Insurance Code | Actions of this claim administrator governed by *Georgia* Insurance Code which regulates how this claims administrator accepts out of area claims with "participating provider" agreements/contracts <u>and</u> non-participating |
|  |  | Upon Information and Belief, All claims accepted by BCBSGA (even if they are self funded claims) must be handled in accordance with Georgia Insurance Code. This key point is critical because when BCBGA accepted the claim in Georgia, assignments are mandated for non-participating providers under Georgia§ 33-24-54 |
|  | All CareFirst BlueCross BlueShield claims transactions including assignment of benefits subjected to Section 1557 of the Affordable Care Act | All Blue Cross and Blue Shield of Georgia transactions including assignment of benefits subjected to Section 1557 of the Affordable Care Act |

51. Upon information and belief, the only addresses provided to members and beneficiaries belong exclusively to Blue Cross. As such, plan documents were submitted to the proper party through the Blue Card program.

52. Areva and Blue Cross are plan fiduciaries that are liable under ERISA. As such, Areva is liable for claim payments, statutory penalties, and breaches of

co-fiduciary duty.

## VII.   CLAIMS FOR RELIEF

**COUNT ONE**

**ENFORCEMENT UNDER 29 U.S.C.§ 1132(a) (1)(B) FOR FAILURE TO PAY ERISA PLAN BENEFITS**

53.     Defendant has failed to fully pay or compensate Plaintiff's claims for treatments rendered to members of the relevant ERISA plan.  Defendant has failed to pay/reimburse the Plaintiff under the ERISA Plan in accordance with the UCR standard on the claims at issue in this litigation.

54.    Defendant breached the ERISA Plans' benefit provision by underpricing and underpaying Plaintiff for out-of-network services provided by Plaintiff to the member  covered under the ERISA Plan.

55.    This cause of action seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C.§1132(a) 1(B).

56.     Defendant has intentionally miscalculated the UCR rate, systematically reduced benefits paid to Plaintiff for out-of-network services, as well as failed to provide a benefit determination and appeal process that provides for a full and meaningful review of the benefit claims and determinations.

57.     The aforementioned statute authorizes actions against ERISA Plans administrators.

58.     Therefore the named Defendant is proper for this claim.   For said violations, Plaintiff is entitled to past due benefits and future benefits.


**COUNT TWO**

**DEFENDANTS FAILED TO PROVIDE PRODUCTION OF  DOCUMENTS UNDER 29 U.S.C. §§ 1024(b), 1104, AND 1133(2), AND FOR STATUTORY PENALTIES UNDER 29 U.S.C. §1132 (c)(1)**


59.     Pursuant to U.S.C.§§ 1024(b), 1104, and 1133(2), Defendant has failed to produce the  "summary plan description… or *other* instruments under which the plan is established or operated."

60.     Section 502(c)(1) of ERISA imposes a fine of up to $110 per day upon a plan administrator who "fails or refuses to comply with a request for any information which the administrator is required by this subchapter to furnish to a participant or beneficiary." *29 U.S.C.§1132(c)(1), §1133*

61.     Wherefore, the Plaintiff requests that Defendant produce the requested documents and the Court impose a fine up to $110 per day for each day Defendant failed to provide the requested documents.

**COUNT THREE**

**ENFORCEMENT UNDER 29 U.S.C. §1105 (a)(2) FOR LIABILITY FOR BREACH OF CO-FIDUCIARY**

62.     Areva failed to comply with Section 404(a) in the administration of the duties (e.g. failed to monitor Blue Cross, failed to instruct other plan fiduciaries to provide or forward plan documents request, failed to provide direct route for provider assignee to obtain plan administration contact information from their agent, Blue Cross, failed to provide a full and fair review under ERISA)

63. In this context, Areva is liable for any related statutory penalties related to count two.

64. Plan Administrators must be liable for bad vendors like Blue Cross. Otherwise, the viscous cycle of unpaid benefits, faulty, negligent appeals, and failure to provide plan documents will continue unless courts start holding plan administrators accountable. After plan administrators start paying hefty fines and penalties, the agents will be forced to get their act together or plan administrators will seek out vendors with better track records.

**WHEREFORE**, Plaintiff prays for and demands judgment against the Defendant as set forth above and as follows:

A. For Defendant to be found liable;

B. For damages in the amount of $1, 414.39 for unpaid services, and

Case 6:16-cv-00029-NKM   Document 1   Filed 06/07/16   Page 26 of 27   Pageid#: 26

C. $101,750.00 (925days) in penalties to date, pursuant to Section 502(c)(1) of ERISA

D. For interest at the applicable legal rate;

E. For filing fees and cost;

This 6th day of June, 2016

06/6/2016

W. A. Griffin, MD
550 Peachtree Street N.E Suite
Atlanta, Georgia 30308
(404) 523-4223